# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

DOYLE TARVER, :

    Plaintiff, :

v. : CA 10-0247-C

MICHAEL J. ASTRUE,
Commissioner of Social Security :

    Defendant. :

## MEMORANDUM OPINION & ORDER

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying his claim for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"). The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Doc. 16 ("In accordance with provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, including . . . order the entry of a final judgment, and conduct all post-judgment proceedings.")) Upon consideration of the administrative record ("R") (Doc. 12), Plaintiff's brief (Doc. 14), the Commissioner's brief (Doc. 17), and the arguments made by the parties at the December 15, 2010 Hearing, it is determined that the Commissioner's decision denying Plaintiff benefits should be affirmed.[1]

---

[1] Any appeal taken from this memorandum opinion and order and judgment shall

# RELEVANT FACTUAL BACKGROUND

Plaintiff filed applications for DIB and SSI on August 29, 2006 (Doc. 1, Compl., ¶ 5; R. 144-152), claiming an onset date of July 8, 2005. (R. 147.) When his applications were denied, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") (R. 78.) Hearings were held on June 23, 2008, October 24, 2008, and April 24, 2009 (R. 21-61), and the ALJ issued an unfavorable decision (R. 10-25) on May 21, 2009, finding that while Plaintiff retained the residual functional capacity ("RFC") to perform less than a full range of light work, he could perform other jobs that exist in significant numbers in the national economy and was, thus, not disabled within the meaning of the Act. (*See* R. 15-19.) Plaintiff requested review by the Appeals Council was denied on April 8, 2010 (R. 1-4), making the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. § 404.981.

The sole issue on appeal is whether the ALJ erred when he failed to secure an opportunity for Plaintiff to cross-examine Andre Fontana, M.D., a state-agency consulting physician. Specifically, Plaintiff argues that he has been prejudiced by his inability to examine Dr. Fontana to determine if Dr. Fontana had the opportunity to review an April 25, 2007 MRI, which Plaintiff contends "establish[es] abnormal L4-5 intervertebral disc which represents a subligamentous herniation demonstrated with accompanying annular

---

be made to the Eleventh Circuit Court of Appeals. (*See* Doc. 16 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court.").)

tear and focal protrusion as detailed; lumbar spondylosis; lumbar facet arthrosis with what appears to be compromise of the right L4-5 neural formina with the erect weight-bearing passive extension posture; and loss of lumbar lordosis." (Doc. 14, p. 2 (citing R. 429-432).) Plaintiff further contends that:

- Dr. Fontana offered no explanation for the omission of any specific reference to the April 2007 MRI in his report (*id.*);

- While the ALJ noted the omission and directed Plaintiff's counsel to draft and submit interrogatories for Dr. Fontana's consideration to establish whether or not he reviewed the April 2007 MRI—which Plaintiff did—Plaintiff never received a response from Dr. Fontana (*id.*, pp. 2-3);

- Plaintiff's requested supplemental hearing to cross-examine Dr. Fontana was held, but Dr. Fontana did not appear at it (*id.*, p. 3);

- The ALJ failed to address Plaintiff's request for this supplemental hearing in his decision (*id.*); and

- The ALJ assigned weight to Dr. Fontana's opinion, without citing any evidence that Dr. Fontana reviewed the April 2007 MRI. (*Id.*)

Further, according to Plaintiff, the ALJ "relied exclusively on the opinions of Dr. Fontana in reaching his decision regarding Plaintiff['s] maximum exertional residual functional capacity, because Dr. Fontana is the only medical source to give an opinion regarding Plaintiff's physical ability." (*Id.*, p. 3 n.3.) Therefore, according to Plaintiff, "Dr. Fontana's opinion does not constitute substantial evidence to support a decision in this case because it is fatally flawed; as the [ALJ] concedes it does not appear Dr. Fontana reviewed the April 2007 MRI report." (*Id.*)

Plaintiff argues (*see id.*, pp. 3-5) that the ALJ's failure "to hold a supplemental

3

hearing, requested by the Plaintiff to allow Plaintiff the opportunity to cross-examine" Dr. Fontana is "reversible error" because it violates section I-2-7-30(H) of the Hearings, Appeals and Litigation Law Manual (the "HALLEX") and "federal case law." (*Id.*, p. 3.)

The Commissioner responds to the alleged HALLEX violation by stating that because the HALLEX "is purely an internal manual and as such, has no legal force and is not binding" (Doc. 17, p. 8), any violation of a procedure set forth in it is harmless error where "there is nothing to indicate Plaintiff has been prejudiced by his inability to cross-examine Dr. Fontana." (*Id.*, pp. 7-9.) The Commissioner further contends that the ALJ's determination of Plaintiff's RFC is supported by substantial evidence. (*Id.*, pp. 5-9.)

## STANDARD OF REVIEW

In all Social Security cases, the claimant bears the burden of proving that he is unable to perform his previous work. *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. *Id.* Once the claimant meets this burden, it becomes the Commissioner's burden to prove that the claimant is capable, given his age, education and work history, of engaging in another kind of substantial gainful employment that exists in the national economy. *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Although at the fourth step, "the claimant bears the burden of demonstrating the inability to return

to her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted).

The task for this Court is to determine whether the ALJ's decision to deny claimant benefits is supported by substantial evidence. Substantial evidence is defined as more than a scintilla, and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 370 Fed. Appx. 995, 996 (11th Cir. 2010) (per curiam) (citing *Dyer v. Bernhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). And finally, "[e]ven if the evidence preponderates against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Id.* (citing *Crawford v. Comm'r of Social Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)).

## **DISCUSSION**

In *Howard v. Astrue*, 505 F. Supp. 2d 1298 (S.D. Ala. 2007), this Court relied on the Fifth Circuit's decision in *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000) (which relied

on the Old Fifth Circuit's decision in *Hall v. Schweiker*, 660 F.2d 116 (5th Cir. 1981))[2] to hold that an ALJ's failure to follow procedures set forth in the HALLEX that results in prejudice to a plaintiff can be grounds for remand. *See id.* at 1301-02; *see also id.* at 1302 (finding "that plaintiff was prejudiced by the ALJ's failure to order a supplemental hearing as required by the HALLEX because he was deprived of the opportunity to cross-examine Dr. Rihner on the critical changes made by the consultative physician on the December 28, 2004 PCE, without the benefit of an additional examination and perhaps updated medical evidence, regarding his ability to sit, stand and walk"). There is uncertainty—based on a split among the Courts of Appeals,[3] as well as between the

---

[2] In *Newton*, the Fifth Circuit held that even though the HALLEX does not have the force of law, "an agency must follow its own procedures, even where the internal procedures are more rigorous than otherwise would be required," and if a claimant is prejudiced by the failure to follow the HALLEX, "the result cannot stand." 209 F.3d at 459 (quotation marks omitted); *but see Mullis v. Astrue*, Civil Action File No. 1:07-CV-1986-AJB, 2008 WL 4452343, at *11 & n.13 (N.D. Ga. Sep. 30, 2008) (applying Fifth Circuit's prejudice standard, but noting that at least one court has concluded "that HALLEX provisions are not binding and do not provide a basis for the court to rule, and [found] the Fifth Circuit's reliance on *Hall*[v. *Schweiker*, 660 F.2d 116 (5th Cir. 1981)] in *Newton* to be misplaced because *Hall* dealt with a Social Security Ruling, not HALLEX (citing *McCoy v. Barnhart*, 309 F. Supp. 2d 1281, 1289 (D. Kan. 2004)).

[3] *See Calhoun v. Astrue*, Civil Action No. 7:08cv00619, 2010 WL 297823, at *3-4 (W.D. Va. Jan. 15, 2010) (recognizing that while the "Fourth Circuit has not addressed the meaning and effect of HALLEX," the "circuits are split with respect to whether the agency must follow its HALLEX guidelines") (citing cases); *Heitz v. Astrue*, No. 09-CV-2019-LRR, 2010 WL 1521306, at *17 (N.D. Iowa Apr. 15, 2010) ("In the absence of a ruling from the Eighth Circuit Court of Appeals, coupled with the weight of authority that HALLEX does not create judicially-enforceable rights, the court declines to find that an ALJ's failure to follow HALLEX is reversible error."); *Moore v. Apfel*, 216 F.3d 864, 868-69 (9th Cir. 2000) (rejecting a claimant's argument grounded in a HALLEX violation, and holding that "HALLEX is strictly an internal guidance tool" without the force of law; thus, the court "will not review allegations of noncompliance with [HALLEX]"); *Bordes v. Comm'r*, 235 Fed. App'x 853, 859 (3d Cir. 2007) (same); *cf. Schweiker v. Hansen*, 450 U.S. 785, 789 (1981) (SSA Claims Manual "has no legal force," and does not bind the agency); *Christensen v. Harris County*, 529 U.S. 576, 587 (2000)

District Courts in the Eleventh Circuit[4]—as to whether or not that HALLEX creates judicially-enforceable rights. What is certain, however, is that—if it does—remand is mandated only when the ALJ violates the procedures in the HALLEX, *see George v. Astrue*, 338 Fed. App'x 803, 805 (11th Cir. 2009) ("[E]ven if we assume that [the] HALLEX carries the force of law—a very big assumption—the ALJ did not violate it."), and if so, that violation prejudices the claimant. *See Maiben v. Astrue*, No. CA 09-0408-C, 2010 WL 761334, at *5 & n.5 (S.D. Ala. Mar. 4, 2010) (ALJ's "undisputed" failure to comply with HALLEX is not grounds for remand if plaintiff not prejudiced).

    A.    **Based on this Court's independent review of the record, it cannot say that the ALJ violated HALLEX I-2-7-30(H)—as Plaintiff alleges**

At the—brief—initial administrative hearing, conducted on June 23, 2008, (*see* R. 21-26), the ALJ suggested that Plaintiff initially be sent for a consultative exam (or CE) with an orthopedic, and Plaintiff's representative at that hearing, Mr. Kemmerly, agreed.[5]

---

(holding that agency interpretations contained in "policy statements, agency manuals, and enforcement guidelines[ ] all . . . lack the force of law").

    [4]    *Compare Howard*, 505 F. Supp. 2d at 1301-02, *and Mullis*, 2008 WL 4452343, at *11 & n.13—both applying the Fifth Circuit prejudice standard—*with Childs v. Astrue*, Civil Action No. 2:07CV945-SRW, 2009 WL 902614, at *6 (M.D. Ala. Mar. 31, 2009) (recognizing that the "Eleventh Circuit has not addressed whether an ALJ's violation of the guidance set forth in the HALLEX is grounds for remand," examining the approach of other circuits, and concluding that "violation of HALLEX provisions do not provide an independent basis for relief against the Commissioner").

    [5]    ALJ:   Yeah. Well, now he's, he's complaining of back -- is that, is that what it is?

    REP:   Yes, sir.

    ALJ:   Well, I'll agree to send [Plaintiff] out for a CE with an orthopedic. Do you want to do that?

(*See* R. 24.) Dr. Fontana examined Plaintiff on August 5, 2008. (*See* R. 430-432.)

At the next administrative hearing, held on October 24, 2008, (*see* R. 27-52), Plaintiff raised his concerns regarding Dr. Fontana's report. (*See* R. 30.) Plaintiff argued that although Dr. Fontana's report specified that Plaintiff was seen by one physician (Dr. Luscher), it was suspect that the report failed to mention the April 2007 MRI or the physician (Dr. Bartholomew) who referred Plaintiff for that MRI.[6] (*See id.*) When asked by the ALJ, Plaintiff responded that he did not remember if Dr. Fontana had asked Plaintiff during the examination whether he "had any test [or] studies done or anything." (*Id.*)

The ALJ questioned whether Dr. Fontana had the April 2007 MRI to review, and—after consultation with Plaintiff's counsel—directed Plaintiff's counsel to draft and submit to the ALJ interrogatories for Dr. Fontana's consideration to establish whether or not he reviewed the April 2007 MRI. (*See* R. 30-32.) The ALJ also indicated that he would be willing to hold a supplemental hearing if necessary. (R. 32.) Plaintiff drafted and submitted interrogatories to the ALJ, which were sent to Dr. Fontana. (R. 202-214.) Dr. Fontana never responded. (*See* R. 219-224 (detailing the numerous attempts made to get a response from Dr. Fontana).)

At the final administrative hearing, held on April 24, 2009, (*see* R. 53-61)—at the

---

      REP: Yes, sir, I would think that would be prudent.

[6] In his report, written the next day, Dr. Fontana stated, without elaboration, that "[t]he medical evidence of record provided by DDS was reviewed and those findings were

request of Plaintiff (*see* R. 216-218)—the ALJ and Plaintiff's counsel discussed the efforts made to get a response from Dr. Fontana. And while Plaintiff's counsel suggested that a further consultative examination (making certain that the April 2007 MRI is included in the medical records submitted for consideration) be conducted, the ALJ stated

> for the record, I think you [Plaintiff's counsel] certainly made the effort, and, you know, it appears to me that, that DDS had made an effort to contact Dr. Fontana, and he is either, you know, unwilling to comment or feels like that he's made sufficient comment. So, at this point, I don't think there's anything that is left for us to do except to submit it for decision.

(R. 58.)

HALLEX 1-2-7-30(H) provides, in part, that "[i]f the claimant requests a supplemental hearing, the ALJ *must grant the request*, unless the ALJ receives additional documentary evidence that supports a fully reasonable decision." *Id.* (emphasis added). The ALJ in this case granted a supplemental hearing at Plaintiff's request. The remaining provisions of HALLEX 1-2-7-30(H)—applicable to this case—are not mandatory and rely on the discretion of the ALJ: "If the claimant requests an opportunity to question the author(s) of any posthearing report other than the written response of an ME or VE to interrogatories, *the ALJ must determine if questioning of the author is required to inquire fully into the matters at issue* and, if so, whether the questioning should be conducted through live testimony or written interrogatories" and "*[i]f the ALJ requests the author to appear for questioning*, and the author declines to appear

---

considered in [his] overall assessment of plaintiff." (R. 431.)

voluntarily, *the ALJ should . . . determine if the claimant should be afforded use of the subpoena and consequent cross-examination*." *Id.* (emphasis added).

Thus, it appears that the ALJ in this case complied with the mandatory provisions of HALLEX 1-2-7-30(H)—by holding the April 24, 2009 supplemental hearing. There can be no violation where the ALJ complies with his duties under the HALLEX. *See George*, 338 Fed. App'x at 805; *see also Laur v. Astrue*, Civil Action No. TMD 08-112, 2010 WL 481318, at *2 (D. Md. Feb. 4, 2010) (recognizing that "even if HALLEX was binding," there is no violation where the ALJ complies with HALLEX I-2-7-30H).

**B.      Even if we assume that the ALJ violated HALLEX I-2-7-30(H), that violation did not prejudice Plaintiff.**

First, when Dr. Fontana saw Plaintiff on August 5, 2008 (R. 430)—more than fifteen months after Plaintiff's April 25, 2007 MRI (*see* R. 417-421)—he had the opportunity to physically examine Plaintiff—not just review his medical records. (*See* R. 430-431 (describing Dr. Fontana's findings of his physical examination of Plaintiff).) *Cf. Meade v. Astrue*, No. 8:09-cv-02027-T-27AEP, 2010 WL 5575303, at *3 (M.D. Fla. Dec. 17, 2010) (noting that the regulations "establish a hierarchy among medical opinions that provides a framework for determining the weight afforded each medical opinion," and that "[u]nder this hierarchy, the opinions of examining physicians are generally given more weight than nonexamining physicians" (internal citations and quotation marks omitted)).

Next, while the Court cannot say definitively—based on his report—that Dr.

Fontana reviewed the April 2007 MRI, Dr. Fontana noted that Plaintiff "was diagnosed with a ruptured disc L4-5" (R. 430; *see also* R. 431 ("status post herniated disc from past medical history")), and the April 2007 MRI also indicated a herniated disc at L4-5. (*See* R. 418.) Even with this knowledge, Dr. Fontana determined that Plaintiff was capable of occasionally lifting and carrying 21-25 pounds, and made other findings consistent with the exertional requirements of light work. (*See* R. 432.)

Finally, *Williams v. Astrue*, Civil Action No. 5:09CV00095, 2010 WL 1924481 (W.D. Va. May 12, 2010), is instructive. In *Williams*, in which the reviewing court remanded because it could not determine that the Commissioner "thoroughly considered all of the medical evidence submitted," *id.* at *4, Dr. John Kalil, a [non-examining] state disability agency psychologist, completed a mental residual functional capacity assessment and psychiatric review technique," in which he "summarized all of the mental health records developed in treatment of Ms. Williams through the date of his assessment," and concluded that the plaintiff had the capacity to perform unskilled work "on a sustained basis despite the limitations resulting from her impairment." *Id.* at *2. The ALJ relied on—even quoting from—Dr. Kalil's report in assessing plaintiff's RFC. Id. at *2-3.

> [J]ust a few weeks after Dr. Kalil completed his assessment, Ms. Williams was seen by psychiatrists in two different treatment systems who found that she experienced serious symptoms in terms of her mental health function. Dr. Kalil did not have the opportunity to consider the findings and opinions of these treating psychiatrists at the time of his assessment of plaintiff's work-related emotional function. Nevertheless, the [ALJ] relied on the report from the nonexamining psychologist in making his clinical findings

> regarding plaintiff's residual functional capacity. ***Inasmuch as Dr. Kalil did not have the opportunity to consider all the medical evidence of record in formulating his assessment, the [ALJ]'s reliance on Dr. Kalil's report cannot be said to be supported by substantial evidence.***

*Id.* at *3 (footnote omitted and emphasis added).

Unlike Dr. Kalil, Dr. Fontana was an examining physician. As such, he was able to physically assess Plaintiff, not just rely on Plaintiff's medical records. *Cf. Meade*, 2010 WL 5575303, at *3. Next, in *Williams*, it was **clear**—because of Ms. Williams' visits to psychiatrists made after Dr. Kalil's assessment—that Dr. Kalil did not have access to all the medical evidence of record when he completed his assessment, but even knowing that, Dr. Kalil's assessment was nevertheless adopted by the ALJ. *See* 2010 WL 1924481, at *2-3. In contrast, Dr. Fontana stated that, in addition to his physical examination of Plaintiff, "[t]he medical evidence of record provided by DDS was reviewed and those findings were considered in the overall assessment of [Plaintiff]." (R. 431.) Plaintiff can do nothing but speculate that the April 2007 MRI was not provided to Dr. Fontana. Moreover, the ALJ specifically considered—and cited to—the April 2007 MRI—and its findings—in his opinion. (*See* R. 16.) *See, e.g., Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004) ("In determining whether [a plaintiff] can return to her past relevant work, ***the ALJ must determine*** the claimant's RFC using all relevant medical and other evidence in the case." (citing 20 C.F.R. § 404.1520(e)) (emphasis added)).

# **CONCLUSION**

Because Plaintiff raises no other claims, and substantial evidence of record supports the ALJ's determination that while Plaintiff can perform less than a full range of light work, he can perform other jobs that exist in significant numbers in the national economy, and is thus not disabled under the Act (R. 15-19), the ALJ's determination is due to be affirmed. *See Maiben*, 2010 WL 761334, at *5.

Accordingly, it is **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff benefits be **AFFIRMED**.

**DONE** this the 21st day of January, 2011.

                                        s/ WILLIAM E. CASSADY
                                        **UNITED STATES MAGISTRATE JUDGE**